40 F.3d 1245
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Salvatore GRILLO, Defendant-Appellant.
 No. 94-5127.
 United States Court of Appeals, Fourth Circuit.
 Argued July 11, 1994.
Decided Nov. 3, 1994.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CR-93-33)
 ARGUED: Thomas Courtland Manning, Cheshire, Parker & Manning, Raleigh, NC, for appellant. John Douglas McCullough, Asst. U.S. Atty., Raleigh, NC, for appellee. ON BRIEF: Robert F. Hurley, Scott F. Wyatt, Cheshire, Parker & Manning, Raleigh, NC, for appellant. Janice McKenzie Cole, U.S. Atty., Raleigh, NC, for appellee.
 E.D.N.C.
 AFFIRMED.
 Before NIEMEYER, MICHAEL, and MOTZ, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Following a traffic stop of Salvatore Grillo for speeding in Warren County, North Carolina, the police officers' questioning of Grillo and his passenger led to a request by the officers to search Grillo's car. When consent was given, a kilogram of cocaine, $40,000 in cash, and a gun were uncovered, leading to his indictment on drug and firearms charges. After Grillo's motion to suppress the proceeds of the search was denied by the district court, Grillo pled guilty to the charges, preserving his right to challenge the search on appeal. He now contends (1) that the stop of his vehicle was pretextual and therefore illegal for any subsequent drug investigation; (2) that the scope of the questioning and period of detention exceeded that justified by a traffic stop; and (3) that he did not consent to the search, arguing that any consent given was tainted by the illegality of the stop and coercion. For the reasons that follow we find his arguments unpersuasive and affirm.
 
 
 2
 The stop in question occurred after Grillo passed North Carolina police officers, who were part of a narcotics task force, on Interstate Route 85. According to the officers, they followed Grillo at speeds approximating 80 miles per hour, which was 15 miles per hour over the speed limit. The Grillo vehicle bore Virginia license plates and a rented car sticker. The officers stopped Grillo for speeding and Grillo produced a Florida driver's license and a car rental agreement. A computer check on both Grillo and the vehicle revealed nothing out of order. Grillo contends that this traffic stop was a pretext for an investigation for narcotics and that, in the absence of any evidence that Grillo was violating narcotics laws, the stop was illegal. He contends, "the Government bears a burden of justifying the warrantless stop of the vehicle that Grillo was driving." He relies on a line of cases represented by United States v. Guzman, 864 F.2d 1512 (10th Cir.1988) (recognizing the relevance of an inquiry into whether stops are pretextual). The difficulty with Grillo's argument is that the jurisprudence of this circuit holds that if a traffic stop is objectively justified by a violation of the traffic laws, the officer's motive, whether pretextual or not, will not render the stop illegal. See United States v. Jeffus, 22 F.3d 554 (4th Cir.1994); United States v. Hassan El, 5 F.3d 726 (4th Cir.1993), cert. denied, 114 S.Ct. 1374 (1994). In this case Grillo concededly was speeding and that traffic violation justified the officers stopping him.
 
 
 3
 Grillo next argues that if the stop was legal, then the officers exceeded its purpose by the nature of their questions and by detaining him for about 30 minutes before he was arrested. He points out that the appropriate scope of a traffic stop is to request a driver's license and vehicle registration, run a computer check, and issue a citation. See United States v. Rusher, 966 F.2d 868 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992).
 
 
 4
 After the officers stopped Grillo, they informed him that he had been stopped for speeding, and requested that he produce a driver's license and registration. Grillo produced a Florida driver's license as well as a rental agreement showing he had rented the car in Baltimore. One of the officers then called in for a computer check concerning Grillo's license and rental agreement. While waiting for the response to that check, the officers returned to question both Grillo and his passenger about their trip. Grillo indicated that he had been visiting Asheboro, North Carolina to check on a car dealership he owned there. He said he had spent the night with some friends and was returning to his residence in Baltimore. When questioned about the discrepancy between his driver's license, which showed a Florida residence, and his statement about his Baltimore residency, Grillo responded that he lived in Baltimore part time with some relatives. The passenger, however, gave a different story and knew nothing about a car dealership. The discrepancies in these stories caused the officers to become suspicious, particularly in light of their knowledge that Interstate 85 was a drug corridor. They asked Grillo whether they could search the vehicle. Grillo refused until he could speak with his attorney. After speaking with his attorney, Grillo consented to the search of the vehicle, which occurred about 10 minutes after the stop.
 
 
 5
 We find nothing in the events leading to Grillo's consent that causes us to conclude that Grillo's Fourth Amendment rights were violated either by the scope of the officers' questions or by the length of Grillo's detention. We find support for our conclusion in United States v. Shabazz, 993 F.2d 431 (5th Cir.1993), a case factually similar to this where the Fifth Circuit concluded that questions posed to the driver and a passenger about their trip, while the police waited for a response from a computer check after a traffic stop, were proper. When the questions to passengers produced conflicting answers, the police officers asked to search the vehicle. When the subsequent consensual search produced incriminating drugs, the driver was arrested. Ruling on a challenge to the propriety of the search, the court stated, "[W]e reject any notion that a police officer's questioning, even on a subject unrelated to the purpose of the stop, is itself a Fourth Amendment violation.... [D]etention not questioning, is the evil at which Terry 's second prong is aimed." Id at 436. Turning to the issue of whether the questioning led to a detention beyond the period permitted for a simple traffic stop, the court concluded:
 
 
 6
 The questioning that took place occurred while the officers were waiting for the results of the computer check. Therefore, the questioning did nothing to extend the duration of the initial, valid seizure. Because the officers were still waiting for the computer check at the time that they received consent to search the car, the detention to that point continued to be supported by the facts that justified its initiation.
 
 
 7
 Id. at 437.
 
 
 8
 Finally, Grillo contends that his consent was not voluntary, particularly in view of the alleged illegal seizure. Because we ruled that the stop was legal, though, it follows that there could be no taint by an alleged illegal stop. Independent of that conclusion, however, there was no coercion caused by the circumstances of the traffic stop that is legally sufficient to justify a conclusion that Grillo's consent was not voluntary. When the officers became suspicious and asked Grillo whether the car could be searched, he refused until he had spoken to his attorney. The officers provided Grillo with a portable phone and he called his attorney. While that call was in progress, Grillo asked one of the officers if he could refuse permission for the search and the officer said that he could, but that the officer believed that he had probable cause to obtain a search warrant from a magistrate. Grillo then returned to his telephone conversation. At the conclusion of the telephone conversation, Grillo was overheard to state, "Well, man, I've got to do what I've got to do and I'm going to let them search the vehicle." Thereafter, both officers testified that Grillo consented to the search. The first officer asked Grillo, "Are you giving us consent to search your vehicle at this time?" and Grillo is reported to have said, "Yes." The second officer reported a similar type of conversation. He had said to Grillo after Grillo's conversation with his attorney, "Wait a minute, what did your lawyer say?" Grillo responded, " 'Open it up,' he said, 'you are going to search it anyway.' " While Grillo may not have known whether probable cause indeed existed or whether the officers could have obtained a search warrant, as they indicated they could, no other aspect of the encounter could even arguably have applied any coercion. Thus, we find no evidence in the record to indicate that there was any level of coercion sufficient to justify a conclusion that Grillo's consent was not voluntary.
 
 
 9
 Finding no violation of Grillo's Fourth Amendment rights, we affirm the ruling of the district court denying the motion to suppress the proceeds of the search.
 
 
 10
 AFFIRMED.